CHARLES G. WESTLECRAFT ET AL. v. DAVID A. BARRY.

Argued February 26, 1912—Decided June 14, 1912.

1. In an action by a builder against an owner upon a building contract, where the plaintiff is wrongfully prevented by the defendant from fully performing his contract, it is error to adopt as the basis for calculating the damages a schedule of payments provided in the contract, where it is not claimed that the payments in the schedule were in proportion to the cost incurred up to the several stages of progress of the work.

2. In an action by a builder against an owner upon a building contract, where the plaintiff claims that the defendant's failure to make a payment was the cause of the failure of the plaintiff to prosecute the building with the speed required by the contract, it is error to exclude evidence that stop notices were served upon the owner by materialmen pursuant to the third section of the Mechanics' Lien act.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and SWAYZE.

For the plaintiff, *Frederick A. Pope* (*Winfield S. Angleman* on the brief).

For the defendant, *Gilbert Collins.*

The opinion of the court was delivered by

SWAYZE, J. This cause was referred by consent. Upon motion to confirm the referee's report, a rule was allowed by a justice of this court requiring the plaintiff to show cause why the report should not be set aside and a new trial granted. To avoid any question as to the power of a justice other than the one who had made the reference to grant such a rule, it was subsequently confirmed by the court as a rule of this court. This was proper practice. *Excelsior Carpet Lining Co.* ads. *Potts,* 7 *Vroom* 301; *Children's Home Association* v. *Hall,* 18 *Id.* 152. The plaintiff is in error in assuming that the decision of the single justice was final. In the first place, although the rule recites his determination to confirm the report and allow a rule to show cause, it does not in form confirm the report, but merely requires the plaintiff to show cause why the report should not be set aside and a new trial be granted. The plaintiff errs also in thinking that the rule was limited to the objection that the referee was not qualified to act. It is general in form and all that it contains as to the qualification of the referee is a mere permission to take depositions on that subject. If, however, the rule had been limited, it was in the power of the court to allow a rule that a single justice had denied. It is common practice on an application for a new trial, and is justified by our decision in *Key* v. *Paul,* 32 *Id.* 133.

We need not consider whether the findings of the referee were against the weight of the evidence, since we are satisfied that he acted upon an erroneous conception of the law applicable to the case.

The suit was upon a building contract by the contractor against the owner. The latter had prevented the contractor from going on with the buildings and had completed them himself, claiming the right to do so under the contract. Assuming that the defendant's action was wrongful, the rule of damages applicable was the rule in *Kehoe v. Rutherford,* 27 *Vroom* 23, which was applied to a building contract in *Wilson* v. *Borden,* 39 *Id.* 627. The referee recognized this rule, but found that the evidence did not enable him to apply it. He, therefore, adopted as the basis of his calculation a schedule which had been agreed upon as a guide to the amount of payments to be made at different stages of the work. It is not claimed that the payments in this schedule were in proportion to the cost incurred up to the several stages of progress of the work. The earlier payments may have been less or more than the cost, dependent upon whether the parties contemplated that the owner should hold back money in order to secure performance by the contractor, or should advance more than had been earned in order to enable the contractor to proceed. The fact that these prices were agreed upon as representing the value of the work does not help; they were mere arbitrary figures. The referee himself finds that the plaintiff failed to prove that any profit would have accrued to him if he had been permitted to complete the work, and since the plaintiff testified that on the whole work he would have made a profit of $1,804, it is quite probable that the figures for the early part of the work were large enough to make that profit possible, and that the figures for the later part of the work were the bare cost, or even less. These considerations suffice to show that the rule adopted by the referee did not correspond with the legal rule as settled by the cases already cited.

The defendant offered to prove that notices had been served upon him under the third section of the Mechanics' Lien act. This evidence the referee excluded because the materialmen who had served the notices had not been paid by the defendant. The ruling involved a misconception of the effect of the notice. The statute provides that notice in writing

shall be given to the owner, who shall thereupon be authorized to retain "the amount claimed, giving the contractor written notice of the demand." Such notice was given at least in some of the cases. Counsel for the defendant expressly stated that the object of the evidence was not for the purpose of an allowance on the debt, but to prove that the owner was obliged under the law to withhold the money. One of the questions in the case was whether the defendant was in default in making a payment to the plaintiff, and the contention was that his failure to make the payment was the cause of the failure of the plaintiff to prosecute the building with the speed required by the contract. It was certainly proper for the defendant to prove that he had a valid excuse for failure to make payment, and the stop notices were one step in that proof.

For these errors the report of the referee must be set aside and there must be a new trial. In view of this result, it may be well to express our opinion upon the right of rescission claimed by the defendant. We think that the architect by giving the three days' notice elected to stand on that provision of the contract rather than on the provision authorizing the owner to terminate the employment of the contractor; and the question of fact is whether the contractor fairly complied with the notice and supplied, as the contract required, a sufficiency of properly skilled workmen, and materials of the proper quality, and was ready to prosecute the work with diligence. It may also be well to point out that the referee erred in holding that the architect was bound to reject defective materials and workmanship before the particular part of the work in question was done. No doubt he must exercise the power to reject promptly (6 *Cyc.* 35), but each part of the work depends on its own circumstances, and sometimes it may happen that the architect cannot know until the work is done whether it will comply with the contract. The referee erred also in holding that damages for the plaintiff's delay could only be for the time that elapsed from October 15th to November 4th. The real question was how long it ought to have taken the owner, with reasonable dili-

gence, to have finished the work. The delay for which the plaintiff was chargeable would be from October 15th, when he should have finished, to the time when the owner, with reasonable diligence, should have finished. The rule adopted by the referee in effect held the owner responsible for finishing the work on the very day he took possession—an impossibility.